## COMMONWEALTH *vs.* BRANDON LOJKO.

No. 09-P-24.

Barnstable. November 9, 2009. - June 22, 2010.

Present: COHEN, VUONO, & GRAINGER, JJ.

*Firearms. Statute,* Construction.

At the trial of a criminal complaint charging the defendant with improper storage of a firearm, in violation of G. L. c. 140, § 131L(*a*), the evidence was insufficient to demonstrate that the defendant failed to keep the firearm secured in a locked container, where neither the statute nor case law requires a gun owner who keeps a firearm secured in a locked container to also store that container in a secure location, and therefore, it was of no consequence that the defendant placed the securely locked box containing the firearm in a portable plastic cooler. [83-85]

COMPLAINT received and sworn to in the Barnstable Division of the District Court Department on July 17, 2008.

The case was heard by *Kathryn E. Hand,* J.

*Matthew C. Harper-Nixon* for the defendant.

*Thomas G. Shack, III,* Assistant District Attorney, for the Commonwealth.

VUONO, J. Following a jury-waived trial in District Court, the defendant was convicted of improper storage of a firearm in violation of G. L. c. 140, § 131L(*a*) (statute). Because we conclude that the judge erred as matter of law in construing the requirements of the statute, we reverse.[1]

---

[1] The defendant also challenged the statute on constitutional grounds, claiming that under the reasoning of the United States Supreme Court in *District of Columbia* v. *Heller,* 128 S. Ct. 2783 (2008), the statute violated his right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution. After oral argument, we stayed the appeal pending the Supreme Judicial Court's decision in *Commonwealth* v. *Runyan,* 456 Mass. 230 (2010), a case in which the constitutionality of the statute was squarely raised. On March 10, 2010, the Supreme Judicial Court issued its decision and

*Facts.* We summarize the facts in the light most favorable to the Commonwealth.[2] See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). On February 20, 2008, Hyannis police Officer Eugene Desruisseaux was dispatched to the defendant's residence as a result of a report that the defendant was suicidal and was threatening to harm himself and others with a firearm. After speaking with the defendant, who acknowledged that he had made threats to kill himself, Officer Desruisseaux asked him if he had a firearm. The defendant replied affirmatively and told the officer that the gun was in a cooler located outside. Meanwhile, another officer found a "little Igloo cooler" in the backyard.[3] Upon opening the cooler, the officer found a locked box in which there was a firearm.

The box, which appears to be made for the firearm by the manufacturer, is composed of a plastic-type material and measures approximately ten-by-six inches.[4] The words "Glock 'safe action' pistol" are written in raised letters across the front of the box. The box is designed with a small hole, which lines up with the firearm's trigger guard. Here, the box was found with a cable lock ("a lock mechanism with a cable" attached) threaded through the hole, thereby securing the firearm in the box as well as locking the box itself. There was no direct testimony as to how the police opened the box. The trial judge, however, found that the box and the lock were adequate.

*Discussion.* In order to prove the offense of improper storage of a firearm, the Commonwealth must demonstrate that the defendant failed to keep the firearm "secured in a locked container" or "equipped with a tamper-resistant mechanical

held that "the legal obligation safely to secure firearms in G. L. c. 140, § 131L (*a*), is not unconstitutional." *Id.* at 237. As the decision in *Runyan* controls, there is no need for further discussion of the defendant's constitutional claim.

[2]Some details are taken from Officer Desruisseaux's police report, which was introduced in evidence.

[3]The police also recovered three fully loaded magazines hidden in the hood of a jacket in the closet of the defendant's bedroom. On a desk in the same room, the police found twenty-five loose forty-caliber rounds of ammunition. The defendant was not charged with any offenses related to the ammunition.

[4]The box was introduced as an exhibit at trial, and we asked for it to be forwarded to us. Our description is based on our own observations.

lock or other safety device." G. L. c. 140, § 131L(*a*).[5] In this case, we are concerned only with the first method of storing a firearm. The Commonwealth's theory of culpability was that, even though the handgun was stored in a locked box, the box and the lock were inadequate, and, further, that the gun was not "secure[]" because anyone could walk away with the cooler in which the gun was hidden or with the locked box itself. The judge adopted the Commonwealth's latter theory, framing the issue as "whether the gun was maintained in a locked and secured location." The judge found the defendant guilty on the ground that, "although . . . the gun was locked," it was not in a "secured location."

The defendant contends that he was not in violation of the statute because the statute permits the storage of a firearm in "*any place*" as long as it is "secured in a locked container" (emphasis added). G. L. c. 140, § 131L(*a*). We agree. In a prior case concerning the improper storage of firearms, we interpreted the word "secured" as indicating that "the container must not merely be locked, but securely locked . . . [i.e.,] maintained in [a] locked container[] in a way that will deter all but the most persistent from gaining access." *Commonwealth* v. *Parzick*, 64 Mass. App. Ct. 846, 850 (2005).[6] Here, the judge's guilty finding was not based on any deficiency in the lock or the box. Rather, as we have noted, the finding was based on a failure to keep the box in a "secured location." However, the fact that the defendant placed the securely locked box in a cooler is of no

---

[5]Section 131L(*a*) of G. L. c. 140, inserted by St. 1998, c. 180, § 47, provides in relevant part:

> "It shall be unlawful to store or keep any firearm . . . in any place unless such weapon is secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner . . . ."

[6]In *Parzick*, the defendant had stored several rifles in his bedroom closet. Although the closet was not equipped with a lock, the defendant locked his bedroom door when he was not at home. The lock to the bedroom door, however, could be easily opened with a bobby pin and "did not prevent ready access by anyone other than the lawful owner." *Commonwealth* v. *Parzick, supra* at 850. Thus, we concluded that, assuming the bedroom was a container, a trier of fact could find beyond a reasonable doubt "that the room was not a securely locked container." *Id.* at 850-851.

consequence. The judge's implicit determination that the lock box adequately secured the firearm should have ended her inquiry; no more was required to determine that the defendant had satisfied the requirements of the statute. Although we acknowledge the safety concerns expressed by the Commonwealth, nonetheless, neither the statute nor our case law requires a gun owner who keeps a firearm "secured in a locked container" to also store that container in a secure *location.* The Commonwealth's interpretation of the statute is simply too expansive. "[W]e do not 'read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose.' " *General Elec. Co.* v. *Department of Environmental Protection*, 429 Mass. 798, 803 (1999), quoting from *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). Furthermore, to hold the defendant to a higher standard would violate the well-settled principle that "[a] criminal statute must be 'sufficiently clear to give notice of the prohibited conduct.' " *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 59 (1997), quoting from *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985). Applying the familiar rules of statutory construction, as well as our reasoning in *Parzick*, the statutory language at issue here requires only that a gun owner secure a firearm in a locked container such that "all but the most persistent [will be deterred] from gaining access." *Commonwealth* v. *Parzick*, 64 Mass. App. Ct. at 850.[7] Should the Legislature choose to consider imposing stricter storage requirements, it is free to do so.

*Judgment reversed.*

*Finding set aside.*

*Judgment for defendant.*

---

[7]We observe as well that our conclusion is consistent with G. L. c. 140, § 123, inserted by St. 1998, c. 180, § 19, which requires firearms dealers to post a notice at each purchase counter stating, "IT IS UNLAWFUL TO STORE OR KEEP A FIREARM, RIFLE, SHOTGUN OR MACHINE GUN IN ANY PLACE UNLESS THAT WEAPON IS EQUIPPED WITH A TAMPER-RESISTANT SAFETY DEVICE OR IS STORED OR KEPT IN A SECURELY LOCKED CONTAINER." See *Commonwealth* v. *Parzick, supra* at 849.